UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-62080-CIV-MORENO/SELTZER

VERONICA ZULIANI, on behalf of herself
and all others similarly situated,

        Plaintiff,

vs.

SANTA ANA, LLC, a Florida Limited Liability
Company, and MARIO SPINA, individually,

        Defendants.
_____/

## REPORT AND RECOMMENDATION

THIS CAUSE is before the Court on Plaintiff's Motion to Conditionally Certify Collective Action and Facilitate Notice to Potential Class Members and Incorporated Memorandum of Law ("Motion") (DE 25) filed February 9, 2018, and was referred to the undersigned pursuant to 28 U.S.C. § 636 (DE 26). Defendants responded (DE 30) to the Motion on February 26, 2018, challenging the sufficiency of opt-in plaintiffs, and Plaintiff replied (DE 36) thereto on March 7, 2018. The undersigned conducted a hearing on the Motion on March 13, 2018 (DE 43).

Having carefully considered the papers in support of and in opposition to the Motion, having heard argument of counsel, and being otherwise fully advised in the premises, the undersigned respectfully RECOMMENDS that the Motion (DE 25) be DENIED for the reasons set forth below.

I.  BACKGROUND

On October 24, 2017, Plaintiff Veronica Zuliani, a former food server at Defendants' restaurant, filed this action alleging various violations of the Fair Labor Standards Act ("FLSA") (DE 1). Eight days later, on November 2, 2017, Zuliani filed a Notice of Consent to Join for Plaintiff Opt-in Anthony Clancy (DE 5). Only days before the hearing and the discovery cut-off date,[1] Plaintiff filed Notices of Consent for Plaintiff Opt-Ins Mauricio Velez (DE 34, DE 40) and Casey Malone (DE 42).[2]

Zuliani, Clancy, and Velez (collectively, "the declarants") have filed virtually identical declarations alleging that they all performed the same or nearly the same duties and were paid in the same manner; Malone, however, has failed to file a declaration. The declarants allege that Defendants had a policy of permitting non-tipped employees, such as managers, polishers, and food expeditors to participate in the servers' tip pool, thereby diminishing their tips and violating the tip pool requirements of the FLSA. The declarants maintain that Defendants' tip-pooling scheme resulted in sub-minimum wage payments for all hours worked under the FLSA. The declarants additionally allege that Defendants regularly deducted from their compensation improper amounts for bussers, hostesses, and other employees, yet these deducted amounts were never actually paid to those employees. Finally, they allege that Defendants did not pay them for all hours worked and, further, did not pay them overtime compensation for the hours they did work in excess of

---

[1] The Court's Scheduling Order set a discovery deadline of March 23, 2018 (DE 20). Plaintiff, however, has moved to stay the action or, alternatively, to extend by 60 days the deadlines set forth in the Scheduling Order (DE 31). That motion is currently pending.

[2] Malone's Consent was filed the evening prior to the hearing (DE 42).

forty (40). According to the declarants, Defendants applied these illegal pay practices uniformly to an estimated 15 to 35 servers and other properly tipped employees who worked at the restaurant over the preceding 3-year period. Plaintiff Zuliani now seeks authorization to facilitate notice to each of the servers and properly tipped employees (wait and service staff) who were subjected to these alleged pay practices during the preceding three years.

II.   LAW

Title 29 U.S.C. § 216(b) permits a plaintiff to bring a collective action on behalf of herself and others similarly situated; the similarly situated plaintiffs must affirmatively opt in to the collective action. See Grayson v. K Mart Corp., 79 F.3d 1086, 1096 (11th Cir. 1996). A prospective opt-in plaintiff must give "consent in writing to become such a party and such consent [must be] filed in the court in which such action is brought." 29 U.S.C. § 216(b). In managing collective actions, courts have the discretion to authorize a notice of opt-in rights to prospective members of the class. Hoffman-LaRoche, Inc. v. Sperling, 493 U.S. 165, 169-74 (1989); Dybach v. State of Fla. Dep't of Corr., 942 F.2d 1562, 1567-68 (11th Cir. 1991). Before authorizing such notice, however, a court "should satisfy itself that there are other employees of the defendant-employer who desire to 'opt-in' and who are 'similarly situated' with respect to their job requirements and with regard to their pay provisions." Dybach, 942 F.2d at 1567-68.

The Eleventh Circuit has endorsed a two-stage procedure that courts may (but are not required to) use to determine whether to certify a collective action. In Hipp v. Liberty Nat'l Life Ins. Co., 252 F.3d 1208, 1219 (11th Cir. 2001), the court described this "effective tool for district courts to use in managing" collective actions:

3

> The first determination is made at the so-called "notice stage." At the notice stage, the district court makes a decision – usually based only on the pleadings and any affidavits which have been submitted – whether notice of the action should be given to potential class members. Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in "conditional certification" of a representative class. If the district court "conditionally certifies" the class, putative class members are given notice and the opportunity to "opt-in." The action proceeds as a representative action throughout discovery.
>
> The second determination is typically precipitated by a motion for "decertification" by the defendant usually filed after discovery is largely complete and the matter is ready for trial. At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question. If the claimants are similarly situated, the district court allows the representative action to proceed to trial. If the claimants are not similarly situated, the district court decertifies the class, and the opt-in plaintiffs are dismissed without prejudice. The class representatives – i.e. the original plaintiffs – proceed to trial on their individual claims.

Id. at 1218 (quoting Mooney v. Aramco Servs. Co., 54 F.3d 1207, 1213-14 (5th Cir.1995)).

The burden of demonstrating that a collective action should be conditionally certified rests with the representative plaintiff. Id. at 1219. As one judge in the Middle District of Florida remarked, although the plaintiff's burden is "very low, it is not invisible," and he observed that "federal courts across the Middle and Southern Districts of Florida have routinely denied requests for conditional certification where, as here, the plaintiffs attempt to certify a broad class based only the conclusory allegations of few employees." Rappaport v. Embarq Mgmt. Co., 2007 WL 4482581, at *4 (M.D. Fla. Dec. 18, 2007) (internal quotations and citations omitted); see also Brooks v. Rainaldi Plumbing Inc., 2006 WL 3544737, at *2 (M.D. Fla. Dec.8, 2006).

4

The Eleventh Circuit has never quantified the number of similarly situated employees that a plaintiff must identify to gain conditional certification. Indeed, some courts have found that as many as twelve employees wishing to opt-in to be insufficient.

> Although there appears to be little binding precedent providing guidelines for numerosity in a FLSA opt-in certification, other district courts have declined to certify classes when there appear to be few potential plaintiffs. See, e.g., Latortue v. Fast Payday Loans, Inc., 2:09CV–171–FTM–29DNF, 2010 WL 557712 (M.D. Fla. Feb.11, 2010) (finding that adding five opt-in plaintiffs was not sufficient to certify class); Rappaport v. Embarq Mgmt. Co., 607CV468ORL19DAB, 2007 WL 4482581 (M.D.Fla. Dec.18, 2007) (finding six opt-in affidavits insufficient to certify class); Sanders v. Drainfield Doctor, Inc., 6:06CV1216ORL28JGG, 2007 WL 1362723 (M.D. Fla. May 7, 2007) **(finding class of twelve employees not large enough to justify class treatment)**.

Smith v. Washington County Kennel Club, Inc., 2014 WL 4627437, at *1 (N.D. Fla. Sept. 16, 2014) (emphasis added). Other courts, including some in this District, have taken a more lenient approach. See, e.g., Pendlebury v. Starbucks Coffee Co., 2005 WL 84500, at *3 (S.D. Fla. Jan.3, 2005) (plaintiff's allegations and four affidavits by employees indicating that others desired to opt in were sufficient); Bell v. Mynt Entm't, LLC, 223 F.R.D. 680, 683 (S.D. Fla. 2004) (affidavits from seven plaintiffs indicating others desired to opt in and detailing allegations of wage violations were sufficient).

The plaintiff must first come forward with sufficient evidence showing that other individuals actually desire to opt in to the litigation: "[A] plaintiff must proffer a minimum quantum of evidence to warrant the creation of a collective [action]. The mere anticipation that others may want to join the lawsuit or the mere presence of a uniformly adverse compensation policy is insufficient by itself." Guerra v. Big Johnson Concrete Pumping, Inc., 2006 WL 2290512, at *4 (S.D. Fla. May 17, 2006). See also Wombles v. Title Max

of Ala., Inc., 2005 WL 3312670, at *3 (M.D. Ala. Dec.7, 2005) (two consents to join and five nearly identical affidavits by plaintiffs indicating that they "believe" others desire to join the lawsuit were insufficient to establish that others desired to opt in); Davis v. Charoen Pokphand (USA), Inc., 303 F. Supp. 2d 1272, 1277 (M.D. Ala. 2004) (plaintiff's testimony that twelve other employees "were unhappy with" Defendant's policies and would join the suit, without supporting affidavits or consents to join, were insufficient); Horne v. United Servs. Auto. Ass'n, 279 F. Supp. 2d 1231, 1236 (M.D. Ala. 2003) (plaintiff's own affidavit indicating he "believed" others desire to opt in was insufficient).

III. ANALYSIS

The instant motion implicates the first stage of the two-step procedure outlined in Hipp. Plaintiff Zuliani asks this Court to conditionally certify this case as a collective action and to permit notice to putative class members advising of their right to opt-in to this litigation.[3] Hence, the Court will look to the pleadings and declarations to determine whether there is record evidence demonstrating that there are a sufficient number of similarly situated current or former employees of Defendants who desire to join in this action.[4]

In determining the propriety of a motion for conditional certification, a court must be mindful of the underlying congressional purpose in authorizing collective actions. As

---

[3] More specifically, Plaintiff seeks to have notice sent "to all current and former servers/hourly paid properly 'tipped' employees (wait and service staff) in the defined class to whom Defendants failed to pay minimum wage and overtime compensation." Motion at 18 (DE 25).

[4] In their Response (DE 30) to the Motion, Defendants do not appear to contest that Plaintiff Zuliani and the opt-in plaintiffs are similarly situated.

articulated by the Eleventh Circuit: "Congress' purpose in authorizing § 216(b) class actions was to avoid multiple lawsuits where <u>numerous</u> employees have allegedly been harmed by a claimed violation or violations of the FLSA by a particular employer." <u>Prickett v. DeKalb County</u>, 349 F.3d 1294, 1297 (11th Cir. 2003) (emphasis added). To date, in addition to Plaintiff Zuliani, only three others (Clancy, Velez, and Malone) have consented to join the litigation. Significantly, Defendants do not run a large business for which there exists the prospect of numerous class members and corresponding judicial efficiencies in class certification; rather, Defendants run a relatively small business, a single-location restaurant, that (by Plaintiff's own estimate) employed as few as 15 and as many as 35 similarly-situated employees over a 3-year period. Three opt-in plaintiffs under these circumstances would not serve Congress' intent of avoiding multiple lawsuits where "numerous" employees have allegedly been harmed.

Plaintiff Zuliani argues that the declarations and consents to join filed by the opt-in plaintiffs are sufficient to warrant conditional certification.[5] In her Reply, Plaintiff rests her argument, in part, on a quotation from a decision out of this District: "'Courts in this [D]istrict have conditionally certified classes with as few as two affidavits from potential plaintiffs.' <u>Rojas v. Garda CL Se., Inc.</u>, 297 F.R.D. 669, 677 (S.D. Fla. 2013)." Reply at 2 (DE 36). Yet, Plaintiff's Reply omits the explanatory citations that followed the quoted sentence from <u>Rojas</u>. The first citation makes clear that the two affidavits referenced in the quoted sentence indicated that **nine other employees** were prepared to opt in to the

---

[5] The undersigned notes that consents to join and declarations were filed by two of the three opt-in plaintiffs, Clancy and Velez. The third opt-in plaintiff, Malone, filed a consent to join but did not file a declaration.

7

litigation, and the other citations make clear that many more than two individuals were prepared to participate in the litigation:

> Courts in this District have conditionally certified classes with as few as two affidavits from potential plaintiffs. See Wynder v. Applied Card Sys., Inc., No. 09–80004, 2009 WL 3255585, at *3 (S.D. Fla. Oct. 7, 2009) **(two affidavits indicating that nine other employees would opt in if given the opportunity sufficient to conditionally certify class)**; see also Reyes, 801 F.Supp.2d at 1356 **(affidavits from five named plaintiffs and consent forms from seven employees sufficient to conditionally certify class)**; Pendlebury v. Starbucks Coffee Co., 10 Wage & Hour Cas.2d 401, 2005 WL 84500, at *3 (S.D. Fla. 2005) **(affidavits from two named plaintiffs and four other individuals sufficient to certify class of store managers at seven different locations across four states)**; Bell v. Mynt Entm't, LLC, 223 F.R.D. 680, 683 (S.D. Fla.2004) **(affidavits of seven plaintiffs that indicated that others desired to opt in sufficient for conditional certification)**.

Rojas, 297 F.R.D. at 676 (emphasis added).

Beyond the three consents filed in this case, Plaintiff Zuliani has failed to show that additional similarly situated employees would be willing to join this litigation, despite her having had five months to make such a showing. Indeed, she located two of the three only on the eve of the hearing and near the close of the discovery period. This failure is telling, given that Defendants' Response challenged the Motion for precisely this reason – the sufficiency of opt-in plaintiffs. More specifically, although the Complaint was filed on October 24, 2017, as of Defendants' February 26, 2018 Response, only one former employee (Clancy) had opted in to his action. And he did so only eight days after the Complaint was filed and well within the time for Plaintiff to have amended her Complaint to add him as a party plaintiff. Following Defendants' challenge to the sufficiency of genuine opt-in plaintiffs, Plaintiff managed to identify just two additional opt-in plaintiffs.

Both of their consents were filed after the deadline to reply had been extended and only days before the March 13, 2018 hearing, bringing the total number of opt-in plaintiffs to three. As of this date, none of the declarations contain evidence even suggesting that any of the other estimated 15 to 35 similarly situated employees are willing to join the litigation. As Judge Altonaga of this District observed in analogous circumstances:

> Plaintiffs attach an affidavit by each of the four named Plaintiffs to the Reply evincing the existence of similarly-situated employees. . . . However, even if these affidavits support Plaintiffs' assertions that there are other similarly situated employees, the affidavits do not indicate any of those employees would choose to opt into the litigation.

Barrera v. Oficina, Inc., 2010 WL 4384212, at *3 (S.D. Fla. Oct. 28, 2010) (Altonaga, J.); see also Haynes v. Singer, Co., Inc., 696 F.2d 884, 887 (11th Cir.1983) (stating that "unsupported allegations that FLSA violations were widespread and that additional plaintiffs" exist are insufficient to meet the plaintiffs' burden). In Barrera, Judge Altonaga concluded: "The Plaintiffs have presented no evidence of any individual's interest in joining this lawsuit, and absent a showing there are similarly situated employees who would opt in, there is no evidentiary basis to permit this matter to go forward as a collective action." 2010 WL 4384212, at *3. So too, Plaintiff Zuliani has presented no evidence that the existing class of opt-in plaintiffs would expand beyond the three individuals that she has located in the preceding five months.

Furthermore, "[c]ertification of a collective action and notice to a potential class is not appropriate to determine whether there are others who desire to join the lawsuit. Rather, a showing that others desire to opt in is required before certification and notice will be authorized by the court." Rodgers v. CVS Pharmacy, Inc., 2006 WL 752831, at *3

(M.D. Fla. March 23, 2006) (citations and footnote omitted) (emphasis added). Were it otherwise, court-authorized notice "would function as little more than a fishing expedition." Rappaport, 2007 WL 4482581, at *5. See also Lima v. Int'l Catastrophe Solutions, Inc., 493 F. Supp. 2d 793, 799 (E.D. La. 2007) ("[E]mployers should not be unduly burdened by a frivolous fishing expedition conducted by the plaintiff at the employer's expense[].") (citations and internal quotations omitted).

The Smith decision from the Northern District of Florida is instructive. There, the court rejected a request for certification by casino poker dealers who alleged that their employer had violated the FLSA by taking improper tip-credits and by paying a sub-minimum wage. After noting that the 2 named plaintiffs had only identified 5 additional members who wished to opt in to the litigation, the district judge stated:

> Plaintiffs have provided no evidence that additional plaintiffs are likely to surface in any meaningful number if this court grants certification. Rather, they appear to admit that without certification they do not know how many employees might be affected by Defendants' tipping practices and how many might choose to opt-in to their action. . . . At this point, certification appears to be a means to a fishing expedition to search for additional plaintiffs. Although I recognize that "district courts have the discretion, in appropriate cases, to implement 29 U.S.C. § 216(b) . . . by facilitating notice to potential plaintiffs," Hoffmann–La Roche Inc. v. Sperling, 493 U.S. 165, 169, 110 S.Ct. 482, 486, 107 L.Ed.2d 480 (1989) (emphasis added), certification is not the appropriate means to discover other plaintiffs to join the lawsuit. See Sanders, 2007 WL 1362723 at *3 (citing Mackenzie v. Kindred Hosps. East, L.L.C., 276 F.Supp.2d 1211, 1220 (M.D.Fla.2003)). See also 1 McLaughlin on Class Actions § 2:16 (10th ed.) (noting that courts should permit discovery about potential plaintiffs "[i]f plaintiff is able to show the existence of employees who are likely to assert similar claims.").
>
> It would not be in the interests of justice to utilize judicial resources to search for a class with so little evidence of its

> existence, and when the existing class is so small (at most seven individuals).

Smith, 2014 WL 4627437, at *2 (emphasis in original).

Although Plaintiff Zuliani estimates that Defendants employed 15 to 35 similarly situated employees who were harmed by Defendants' alleged FLSA violations, she has failed to provide evidence after 5 months that additional employees (beyond Clancy, Velez, and Malone) are likely to surface in any meaningful number. This failure amounts to a tacit admission that without mailing notice to Defendants' current and former wait and service staff she does not know how many might choose to opt in. To borrow language from the Smith opinion, "[a]t this point," Plaintiff's certification request "appears to be a means to a fishing expedition to search for additional plaintiffs. . . . [C]ertification[, however,] is not the appropriate means to discover other plaintiffs to join the lawsuit." Id. at *2.

## IV. CONCLUSION

"[I]n all cases, the decision to create an opt-in collective action remains 'soundly within the discretion of the district court.'" Rappaport, 2007 WL 4482581, at *4 (quoting Hipp, 252 F.3d at 1219). In this matter, the undersigned believes that the interests of justice would not be served by utilizing judicial resources to search for a class when there is little evidence of its existence and when the existing (putative) class is so small.[6] Furthermore, given that Plaintiff has secured a very small number of consents (3) despite

---

[6] Although Plaintiff presents three opt-in plaintiffs for the Court's consideration, Defendants observe that she could have added one of the three, Anthony Clancy, as a party-plaintiff through an amendment to the Complaint; Plaintiff instead elected to join Clancy as an opt-in plaintiff eight days after she had commenced the action. Defendants characterize this election as a tactic to manufacture a class from what should have been a two-plaintiff case.

11

having had five (5) months to do so,[7] given that Plaintiff's employer and its corresponding workforce has been relatively small, and given that Plaintiff has failed to show that there are any additional similarly situated employees, let alone "numerous" employees, who would be willing to join this litigation, the undersigned concludes that a collective action in this matter would not achieve the judicial efficiencies contemplated by § 216(b) and that conditional certification is not warranted.

Accordingly, the undersigned RECOMMENDS that the Plaintiff's Motion to Conditionally Certify Collective Action and Facilitate Notice to Potential Class Members and Incorporated Memorandum of Law (DE 25) be DENIED.

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Federico A. Moreno, United States District Judge. Failure to file objections timely shall bar the parties from a _de novo_ determination by the District Judge of an issue

---

[7] At the hearing, Defendants argued that by filing two of the three consents just prior to the hearing and near the close of the discovery period – one of the consents was filed on the evening prior to the hearing and only eleven days before the discovery cut-off – Plaintiff has effectively denied them the opportunity to engage in adequate discovery of the two late joining opt-in plaintiffs.

covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. See 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140, 149 (1985); Henley v. Johnson, 885 F.2d 790, 794 (1989); 11th Cir. R. 3-1 (2016).

DONE AND SUBMITTED in Chambers, Fort Lauderdale, Florida, this 14th day of March 2018.

*/s/ Barry S. Seltzer*
BARRY S. SELTZER
United States Magistrate Judge

Copies to:

Honorable Federico A. Moreno
United States District Judge

All counsel of record